UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

TIFFANY DOBERSTEIN
on behalf of herself and all
others similarly situated,

       Plaintiff,                                  Case No. 18-cv-1931

     v.

EAST WISCONSIN SAVINGS BANK,

       Defendant.

---

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

---

TO:    East Wisconsin Savings Bank
         c/o Gregory B. Gill, Sr.
         Gill & Gill, S.C.
         501 S. Nicolet Road
         Appleton, WI 54914

NOW COMES Plaintiff, Tiffany Doberstein, on behalf of herself and all others similarly situated, by her attorneys, Walcheske & Luzi, LLC, and as and for *Plaintiff's First Set of Interrogatories and Requests for Production of Documents*, Ms. Doberstein propounds the following discovery requests upon Defendant, East Wisconsin Savings Bank, pursuant to Fed. R. Civ. P. 33 and 34 to be answered within thirty (30) days after service of this request.

### INSTRUCTIONS

A.    In answering *Plaintiff's First Set of Interrogatories and Requests for Production of Documents, Bank* must furnish all requested information not subject to valid objection that is

**EXHIBIT 2**

known by, possessed by, or available to *Bank* or its agents, employees, *attorneys*, consultants or representatives.

B. If *Bank* is unable to fully answer any of *Plaintiff's First Set of Interrogatories and Requests for Production of Documents,* then *Bank* must answer to the fullest extent possible, specifying the reason or reasons for its failure to answer the remainder, and stating whatever information, knowledge or belief *Bank* has concerning the unanswerable portion.

C. If either *Bank* or its *attorney* interposes an objection to any of *Plaintiff's First Set of Interrogatories and Requests for Production of Documents* as being either vague or ambiguous, then *Bank* must identify each word or phrase that it considers either vague or ambiguous, define that term as *Bank* understands it, and answer the discovery request according to that understanding.

D. If *Bank* or its *attorney* interposes an objection to any discovery request as being overly broad, *Bank* must state what it believes to be a proper limitation of the breadth of *Plaintiff's First Set of Interrogatories and Requests for Production of Documents* and answer it according to that limitation.

E. An evasive or incomplete answer is deemed to be a failure to answer and may render *Bank* or its *attorney*, or both, liable for the expenses of a motion to compel.

F. If a numbered discovery request contains a subpart, then either *Bank* or its *attorney* must object separately to each subpart, and if *Bank* or its *attorney* objects to less than all of the subparts of a numbered discovery request, then *Bank* must answer the remaining subparts. In addition, if either *Bank* or its *attorney* objects to a discovery request or a subpart thereof as calling for information that is beyond the scope of discovery, *Bank* must, nevertheless, answer the request or subpart thereof, to the extent that it is not objectionable.

# DEFINITIONS

The following terms are defined as follows for the purpose of *Plaintiff's First Set of Interrogatories and Requests for Production of Documents*. Specifically defined terms shall be delineated throughout *Plaintiff's First Set of Interrogatories and Requests for Production of Documents* by use of an italic font. Any terms not specifically defined should be read within the context of *Plaintiff's First Set of Interrogatories and Requests for Production of Documents* and the above-captioned litigation, in general, in order to encompass the broadest possible meaning. This includes, but is not limited to, a word's gender, plurality, and tense.

If *Bank* does not understand a particular term or phrase, good faith requires *Bank* to apply ordinary connotations and common meanings to that term or phrase. Where a response cannot be made without clarification as to the meaning of a particular term, good faith requires *Bank* to request clarification prior to submitting its response.

"Attorney" – shall mean each and every individual to whom the attorney-client privilege extends pursuant to Fed. R. Evid. 502.

"Bank" – shall mean Defendant East Wisconsin Savings Bank as well as its subsidiaries, affiliates, commonly controlled entities, companies, enterprises, ventures, officers, shareholders, directors, representative employees, agents and anyone working on its behalf or purportedly working on its behalf, excluding its *attorney*.

"Communication" – shall mean the transmittal of information in the form of facts, ideas, inquiries, opinions, or otherwise.

"Describe" or "Describe in Detail" – when used in reference to a document or other written or oral communication, shall mean to state:

  a. The type of *document* or other *communication*;

> b. Date made;
>
> c. Persons involved in *communication*;
>
> d. Present location or possession of the *document* or written or other recorded evidence of *communication*; and
>
> e. Substance of matter contained in the *document* or other *communication*, including factual setting in which made, substantive content and purpose for the *communication*.

"Describe" or "Describe in Detail" – when used in reference to a factual situation or allegation, shall mean to state with particularity all facts known to *Bank* connected with, bearing upon, or relating in any way to the matters of which inquiry is made. When *Plaintiff's First Set of Interrogatories and Requests for Production of Documents* seeks such a description and lists by way of example several categories, classes or things that may be related to the general interrogatory, the description requested should treat such things or categories individually, and if *Bank* knows of no instance or factual matter relating to such category, class or thing, *Bank* should specifically so state.

"Doberstein" – shall mean Plaintiff, Tiffany Doberstein, on behalf of herself and all other similarly situated *employees* at *Bank* during the period of time beginning on December 7, 2015 and ending December 7, 2018.

"Document" – shall be synonymous in meaning and equal in scope to the definition found in Fed. R. Civ. P. 34(a), and shall include, but is not limited to, any written, printed, typed, electronic or other graphic matter of any kind or nature and all mechanical and electronic sound recordings or descriptions whether such document is currently within *Bank's* possession, custody, or control. A draft or non-identical copy is a separate *Document*.

"Employ" or "Employed" – shall be synonymous in meaning and equal in scope to the definition provided for by 29 U.S.C. § 203(g).

"Employee" or "Employees" – shall mean any individual, including *Doberstein*, who suffers or is permitted to work or who has suffered or was permitted to work at *Bank* for the period of time beginning on December 7, 2015 and ending December 7, 2018.

"Extra compensation" – shall be synonymous in meaning and equal in scope to the definition provided for by 29 U.S.C. § 207(h)(2).

"Identify" or "Identity" – when used in reference to any individual person shall mean to state:

    a. His or her full name;

    b. His or her present or last known address; and

    c. His or her present or last known business affiliation.

"Identify" or "Identity" - when used in reference to a *document* shall mean to state:

    a. The type of *document* (e.g. letter, memorandum, printout, report, newspaper, etc.);

    b. The date, if any, of the *document*;

    c. The author;

    d. The addresses;

    e. The present location;

    f. The person or persons having custody or control over it; and

    g. The person or persons executing this *document*.

If any such *document* was, but is no longer, in *Bank's* possession, custody or control, then *Bank* must state what disposition was made of said *document*. In all instances in which *Plaintiff's First Set of Interrogatories and Requests for Production of*

*Documents* seeks detailed descriptions of *documents*, copies of such *documents* may be attached to *Bank's* answers in lieu of the detailed description, if copies are available.

"Non-Exempt Employee" – shall mean each and every hourly *employee* who does not fall within an exemption pursuant to 29 U.S.C. § 213.

"Non-Discretionary Bonus" – shall mean any monetary payment made in addition to regular earnings or wages.

"Overtime" – shall mean any and all hours, exceeding forty, in a *workweek* in which a *non-exempt employee* is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce.

"Regular Rate" – shall be shall be synonymous in meaning and equal in scope to the definition provided for by 29 U.S.C. § 207(e).

"Workweek" – shall be synonymous in meaning and equal in scope to the definition provided for by 29 C.F.R. § 778.105.

## **INTERROGATORIES**
Instructions

1. Answer each interrogatory separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection must be stated in lieu of answer.

2. *Bank* is under a continuing duty to supplement its response with respect to any question directly addressed to the identity and location of persons having knowledge of discoverable matters, the identity of each person expected to be called as an expert witness at trial and the subject matter on which he or she is expected to testify, as well as each interrogatory which seeks information to the present date. Furthermore, *Bank* is under a similar duty to correct any incorrect response when *Bank* later learn that it is incorrect.

**INTERROGATORY NO. 1**.  *Identify* the total number of *non-exempt employees* who performed or carried out their principal job duties and/or functions at *Bank* during the period of time beginning December 7, 2015 and ending December 7, 2018.

**INTERROGATORY NO. 2**.  For each and every *non-exempt employee*, enumerated in response to Interrogatory No. 1, *identify* each and every *non-exempt employee* who received a *nondiscretionary bonus* and/or *extra compensation* during the period of time beginning December 7, 2015 and ending December 7, 2018.

**INTERROGATORY NO. 3.**  For each and every *non-exempt employee identified* in response to Interrogatory No. 2, *identify* each and every *non-exempt employee* who worked *overtime* during the period of time beginning December 7, 2015 and ending December 7, 2018, and include all of the following:

      a.    Employee identification number;

      b.    Last known address and telephone number;

      c.    Job title;

      d.    Dates of employment at *Bank;*

      e.    The *employee* with whom the *non-exempt employee* directly reported; and

      f.    If the *non-exempt employee* is no longer employed by *Bank*, the reason for the separation from the employment of *Bank.*

**INTERROGATORY NO. 4.**  For each and every *non-exempt employee identified* in response to Interrogatory No. 3, *identify* the total number of non-*overtime* hours actually worked per *workweek* by said *non-exempt employee* from March 2, 2015 through the present date.

**INTERROGATORY NO. 5.**  For each and every *non-exempt employee identified* in response to Interrogatory No. 3, *identify* the rate of pay, per hour, remunerated or made by *Bank*

to said *non-exempt employee* for all non-*overtime* hours actually worked, per *workweek* during the period of time beginning December 7, 2015 and ending December 7, 2018.

**INTERROGATORY NO. 6.** For each and every *non-exempt employee identified* in response to Interrogatory No. 3, *identify* the total amount remunerated or made by *Bank* to said *non-exempt employee* for each separate category of *nondiscretionary bonus* and/or *extra compensation* during the period of time beginning December 7, 2015 and ending December 7, 2018 and *identify* the period during which the *nondiscretionary bonus* and/or *extra compensation* was earned by said *employee.*

**INTERROGATORY NO. 7.** For each and every *non-exempt employee identified* in response to Interrogatory No. 3, *identify* the total number of *overtime* hours actually worked per *workweek* by said *non-exempt employee* during the period of time beginning December 7, 2015 and ending December 7, 2018.

**INTERROGATORY NO. 8.** For each and every *non-exempt employee identified* in response to Interrogatory No. 3, *identify* the amount ascertained, calculated, concluded, and/or determined by *Bank* to be the *regular rate* of pay for *overtime* compensation purposes for said *non-exempt employee* for each and every *workweek* during the period of time beginning December 7, 2015 and ending December 7, 2018.

**INTERROGATORY NO. 9.** *Describe in detail Bank's* compensation and benefits guidelines, policies, procedures, and practices, as they existed in the years 2015, 2016, 2017, and 2018 with respect to the manner or method in which *Bank* ascertained, calculated, concluded, and/or determined the *regular rate* of pay for *overtime* compensation purposes for its *non-exempt employees*, including *Doberstein.*

**INTERROGATORY NO. 10.** *Identify* the *employee* or *employees* who are the most knowledgeable regarding *Bank's* compensation and benefits guidelines, policies, procedures, and practices, as they existed in the years 2015, 2016, 2017, and 2018 with respect to the manner or method in which *Bank* ascertained, calculated, concluded, and/or determined the *regular rate* of pay for *overtime* compensation purposes for its *non-exempt employees*, including *Doberstein.*

**INTERROGATORY NO. 11.** *Identify* each and every category of *nondiscretionary bonus* and/or *extra compensation* remunerated to any or all *non-exempt employees,* including *Doberstein,* during the period of time beginning December 7, 2015 and ending December 7, 2018.

**INTERROGATORY NO. 12.** For each category of *nondiscretionary bonus* and/or *extra compensation identified* in response to Interrogatory No. 11, *describe in detail* the eligibility requirement(s), criteria(ion), benchmark(s), or other *non-discretionary* factor(s), established by *Bank,* the satisfaction of which would entitle any or all *non-exempt employees* to said remuneration.

**INTERROGATORY NO. 13.** For each category of *nondiscretionary bonus* and/or *extra compensation identified* in response to Interrogatory No. 11, *describe in detail* the purpose for which said remuneration was established and paid to *Bank's non-exempt employees,* including *Doberstein.*

**INTERROGATORY NO. 14.** *Identify* the *employee* or *employees* who are the most knowledgeable regarding the eligibility requirement(s), criteria(ion), benchmark(s), or other *non-discretionary* factor(s), established by *Bank,* the satisfaction of which would entitle any or all *non-exempt employees* to said remuneration.

**INTERROGATORY NO. 15**. *Describe in detail* the manner or method in which *Bank* ascertained, calculated, concluded, and/or determined *non-exempt employees',* including

*Doberstein's,* actual hours worked each *workweek* during the period of time beginning December 7, 2015 and ending December 7, 2018.

**INTERROGATORY NO. 16**. *Identify* the *employee or employees* who are the most knowledgeable regarding the manner or method in which *Bank* ascertained, calculated, concluded, and/or determined *non-exempt employees',* including *Doberstein's,* actual hours worked each *workweek* during the period of time beginning December 7, 2015 and ending December 7, 2018.

**INTERROGATORY NO. 17:** *Identify* any and all policies, methods, and/or practices regarding the storage and/or preservation of information derived by any system, means, processes, and/or methods with which *Bank* tracked and/or recorded the actual hours of work of its *non-exempt employees*, including *Doberstein,* and *describe in detail* any and all steps taken by *Bank* to preserve said information regarding or relating to its *non-exempt employees*', including *Doberstein's,* timekeeping and payroll information or records during the period of time beginning December 7, 2015 and ending December 7, 2018.

**INTERROGATORY NO. 18**. *Describe in detail* the manner or method in which *Bank* ascertained, calculated, concluded, and/or determined *non-exempt employees',* including *Doberstein's, regular rate of pay* for *overtime* purposes during the period of time beginning December 7, 2015 and ending December 7, 2018.

**INTERROGATORY NO. 19.** *Identify* the *employee or employees* who are the most knowledgeable regarding the manner or method in which *Bank* ascertained, calculated, concluded, and/or determined *non-exempt employees',* including *Doberstein's,* a *regular rate of pay* for *overtime* purposes during the period of time beginning December 7, 2015 and ending December 7, 2018.

**INTERROGATORY NO. 20:** *Identify Bank's workweek* during the period of time beginning December 7, 2015 and ending December 7, 2018.

## REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 34, *Doberstein* hereby requests that *Bank* produce the following *documents* by delivering authenticated duplicate paper copies of the same to the offices of Walcheske & Luzi, LLC, located at 15850 W. Bluemound Road, Suite 304, Brookfield, Wisconsin 53005 or by sending authenticated digital copies of the same via electronic mail to dpotteiger@walcheskeluzi.com or by delivering a digital storage device containing said copies to Walcheske & Luzi, LLC, located at 15850 W. Bluemound Road, Suite 304, Brookfield, Wisconsin 53005, within thirty (30) days after service of this request.

In the event *Bank* withholds or redacts any *document* on the basis of the invocation of a privilege, *Bank* must produce a privilege log setting for the matter redacted or the *document* withheld and state therein:

   a.   The privilege asserted;

   b.   The title of the *document* or other *communication*, when applicable, or where inapplicable, the type of *document* or other *communication*;

   b.   Date created;

   c.   Author of the *document* or persons involved in the *communication*;

   d.   Present location or possession of the *document* or written or other recorded evidence of *communication*; and

   e.   To the extent possible without divulging privileged material, a summary of the subject matter contained in the *document* or other *communication*, including factual setting in which made, substantive content and purpose for the *communication*.

**REQUEST NO. 1.**   Each and every *document identified* or *described* in *Bank's* responses to *Plaintiff's First Set of Interrogatories and Requests for Production of Documents.*

**REQUEST NO. 2.** Each and every *document* reviewed, consulted, referred to, or relied upon by *Bank,* excluding *Bank's attorneys,* when drafting, reviewing, revising, authenticating, or verifying any factual admission, denial, or affirmative representation in *Bank's* Answer (ECF No. 9) to the Complaint (ECF No. 1).

**REQUEST NO. 3.** Each and every *document* reviewed, consulted, referred to, or relied upon by *Bank,* excluding *Bank's attorneys,* when drafting, reviewing, editing, revising, authenticating, or verifying its answers or responses to *Plaintiff's First Set of Interrogatories and Requests for Production of Documents*.

**REQUEST NO. 4.** Each and every *document* reviewed, consulted, referred to, or relied upon by *Bank,* excluding *Bank's attorneys,* when drafting, reviewing, revising, authenticating, or verifying information supplied by *Bank* in *Bank's Initial Disclosures* made pursuant to Fed. R. Civ. P. 26.

**REQUEST NO. 5.** Each and every *document identified* in *Bank's Initial Disclosures* made pursuant to Fed. R. Civ. P. 26.

**REQUEST NO. 6.** Each and every *document* made by, delivered to, or exchanged with an *employee* of *Bank* referring, relating to, or in any way regarding *Doberstein* and/or *Doberstein's* employment with *Bank*, including but not limited to her compensation, hours worked, *overtime*, remuneration, discipline, performance reviews, or separation of employment from *Bank*.

**REQUEST NO. 7.** Each and every *document* contained within *Doberstein's* personnel file.

**REQUEST NO. 8.** Each and every *document* regarding or in any way related to or which *identifies* the position(s) held by *Doberstein* during her employment with *Bank*, including but not limited to job description(s).

**REQUEST NO. 9.** Each and every pay stub or check stub issued by *Bank* to any or all *non-exempt employees,* including *Doberstein,* during the period of time beginning December 7, 2015 and ending December 7, 2018.

**REQUEST NO. 10.** Each and every *document* which *Bank* reviewed, consulted, referred to, or relied upon when determining or calculating any or all *non-exempt employees',* including *Doberstein's,* compensation or which otherwise relates to the hours any or all *non-exempt employees,* including *Doberstein,* worked at *Bank* during each and every *workweek* during the period of time beginning December 7, 2015 and ending December 7, 2018, including but not limited to: time cards or other similar time entry records; attendance calendars; timekeeping reports, spreadsheets, databases, data summaries and compilations; and e-mails, correspondence, or other memoranda.

**REQUEST NO. 11.** Each and every *communication* including *documents* made by, delivered to, or exchanged with an *employee* of *Bank* regarding *Bank's* compensation and benefits guidelines, policies, procedures, and practices, as they existed in the years 2015, 2016, 2017, 2018 with respect to the manner or method in which *Bank* ascertained, calculated, concluded, and/or determined the *regular rate* of pay for *overtime* purposes for its *non-exempt employees*.

**REQUEST NO. 12.** Each and every *communication* including *documents* made by, delivered to, or exchanged with an *employee* of *Bank* regarding the eligibility requirement(s), criteria(ion), benchmark(s), or other *non-discretionary* factor(s), established by *Bank,* the satisfaction of which would entitle any or all *non-exempt employees,* including *Doberstein*, to said remuneration.

**REQUEST NO. 13.** For each and every *non-exempt employee identified* in response to Interrogatory No. 3, each and every *document* regarding or in any way related to or which *identifies*

PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS    **13** | PAGE
Case 1:18-cv-01931-WCG    Filed 07/11/19    Page 13 of 14    Document 18-2

the position(s) held by said *non-exempt employee* during his or her employment with *Bank*, including but not limited to job description(s).

Dated this 8th day of March, 2019.

                                        WALCHESKE & LUZI, LLC
                                        Counsel for Plaintiff

                                        **s/ *David M. Potteiger***
                                        James A. Walcheske, State Bar No. 1065635
                                        Scott S. Luzi, State Bar No. 1067405
                                        David M. Potteiger, State Bar No. 1067009

WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
dpotteiger@walcheskeluzi.com